**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **BRG INSURANCE SOLUTIONS LLC, a** | § | |
| **Texas Limited Liability Company,** | § | |
| **HOWARD CRISSEY & ASSOCIATES** | § | |
| **AGENCY, INC., and HOWARD** | § | |
| **CRISSEY, an individual and sole** | § | |
| **proprietorship, d/b/a BENEFIT** | § | |
| **RESOURCE GROUP,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **Civil Action No. 3:16-CV-2448-N** |
| **v.** | § | |
| | § | |
| **DANIEL ("DANNY") O'CONNELL, an** | § | |
| **individual, LISA MILKE, an individual,** | § | |
| **NEXT LEVEL INSURANCE GROUP** | § | |
| **LLC, a Texas Limited Liability Company,** | § | |
| **DANIEL R. MEYLAN, an individual, and** | § | |
| **TAPADERO PARTNERS LLC, a** | § | |
| **Colorado Limited Liability Company,** | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANTS NEXT LEVEL INSURANCE GROUP LLC'S AND**
**DANIEL O'CONNELL'S FIRST AMENDED ANSWER TO**
**PLAINTIFFS' FIRST AMENDED COMPLAINT AND COUNTERCLAIMS**

Defendants Daniel O'Connell ("O'Connell") and Next Level Insurance Group LLC ("Next Level") (together, "Defendants"), by and through their attorneys, as and for their First Amended Answer to the First Amended Complaint (the "Complaint") of Plaintiffs BRG Insurance Solutions LLC, Howard Crissey & Associates, Inc. ("HCA") and Howard Crissey ("Crissey"), individually and as a sole proprietorship d/b/a Benefit Resource Group ("BRG") (collectively, "Plaintiffs"), state and plead as follows:

## PARTIES

All allegations of the Complaint not hereinafter specifically admitted, explained or qualified are denied and, with reference to each paragraph therein, Defendants state the following:

1.      Admitted on information and belief.

2.      Admitted on information and belief.

3.      Admitted.

4.      Admitted that O'Connell was an employee of HCA beginning in or around 2015 to July 25, 2016. Prior to that, O'Connell was an independent contractor to BRG for approximately eight and a half years.  Admitted that O'Connell resided in Texas while an independent contractor to BRG and an employee of HCA.

5.      Admitted on information and belief.

6.      Admitted on information and belief.

7.      Admitted that Next Level is a Texas limited liability company. Denied as to the allegation that Next Level's principal place of business is located at 7228 Lakehurst Avenue, Dallas, Texas 75230.

8.      Admitted on information and belief.

9.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9 and therefore deny them.

10.     Admitted on information and belief.

11.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 and therefore deny them.

12.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 and therefore deny them.

## JURISDICTION AND VENUE

13.     Admitted.

14.     Admitted that O'Connell, Next Level, Milke, and Hooser are citizens of Texas. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the residency or citizenship of Daniel R. Meylan ("Meylan") and Tapadero Partners LLC ("Tapadero") and therefore deny them. Denied as to the remaining allegations in paragraph 14.

15.      Admitted that O'Connell and Next Level are citizens of Texas. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the activities of Meylan and Tapadero in the State of Texas and therefore deny them. Denied as to the remaining allegations in paragraph 15.

## FACTUAL BACKGROUND

16.     Admitted upon information and belief that some or all Plaintiffs are engaged in an insurance-related business that offers health, benefit or insurance-related services.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the number of businesses to which Plaintiffs offer such services and therefore deny them.

17.     Admitted that Crissey is a licensed insurance agent servicing clients in Texas and other states. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 17 and therefore deny them.

18.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 and therefore deny them.

19.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 and therefore deny them.

20.     Admitted upon information and belief that Lisa Milke ("Milke") was first employed by BRG on or about August 12, 1998, and remained employed with BRG for approximately seventeen years. Denied as to the remaining allegations in paragraph 20.

21.     Admitted that O'Connell was hired as an independent contractor for BRG in 2006, was married to Kate O'Connell (formerly Kate Crissey, daughter of Howard Crissey) at that time, and was terminated on July 25, 2016. Denied as to the remaining allegations in paragraph 21.

22.     Admitted that O'Connell was terminated.  Denied as to the remaining allegations in paragraph 22.

23.     Denied.

24.     Denied.

25.     Denied.

26.     Admitted that Hollie Hooser ("Hooser") became employed by BRG in or around January 2016, and signed the document attached as Exhibit 1 to the Complaint.  Defendants respectfully refer the Court to Exhibit 1 to the Complaint for a full and accurate description of its contents.

27.     Denied as to the allegation that Plaintiffs developed any such business or marketing plans, presentations, client lists or potential client lists during O'Connell's tenure as an independent contractor to and then employee of BRG. Defendants lack knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in paragraph 27 and therefore deny them.

28.     Denied as to the allegation that any such methodology existed or was utilized during O'Connell's tenure as an independent contractor to and then employee of BRG. Defendants further state that BRG employees utilized forms issued by insurance carriers, not BRG, to obtain insurance quotes. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 28 and therefore deny them.

29.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29 and therefore deny them.

30.     Denied as to the allegation that BRG managers, directors and employees were "trust[ed]. . . with access to a highly cultivated client relationship built on proprietary information and processes developed and utilized by [BRG]," or that any such proprietary information or processes existed. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 30 and therefore deny them.

31.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that BRG "has obtained particular leads for new clients through paid advertising, agent contacts, client introductions, referrals and otherwise."  Denied as to the remaining allegations in paragraph 31.

32.     Admitted that BRG maintains information regarding clients, employees, payroll, benefits and wages.  Denied as to the allegation that any such information is "comprehensive" or maintained in an accurate, organized database.

33.     Denied.

34.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34 and therefore deny them.

35.     Denied.

36.     Denied.

37.     Denied.

38.     Denied.

39.     Denied.

40.     Denied.

41.     Admitted.

42.     Admitted that O'Connell became Crissey's son-in-law in August 2006.  Denied as to the remaining allegations in paragraph 42.

43.     Admitted that O'Connell became an independent contractor to BRG after marrying Kate O'Connell and that he serviced clients.  Denied as to the remaining allegations in paragraph 43.

44.     Denied.

45.     Denied.

46.     Admitted that BRG relied heavily on O'Connell's expertise and interpersonal communication skills to manage, foster, and maintain client relationships.  Denied as to the remaining allegations in paragraph 46.

47.     Admitted that, in connection with performing certain services as an independent contractor and, later, as an employee, O'Connell interacted with BRG employees staffed onsite and had a professional relationship with them. Denied as to the remaining allegations in paragraph 47.

48.     Denied. Defendants further state that information accessible to O'Connell was not proprietary, and BRG did not maintain "competitive client pricing methodologies and strategies" as alleged.

49.     Denied.

50.     Denied.

51.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51 and therefore deny them.

52.     Denied.

53.     Denied.

54.     Denied.

55.     Denied.

56.     Denied.

57.     Denied.

58.     Admitted that on or about January 4, 2016, Hooser entered into an employment contract with BRG, a copy of which is attached as Exhibit 1 to the Complaint.

59.     Denied.

60.     Admitted on information and belief that Milke was hired by HCA on or about August 12, 1998. Denied as to the allegation that Milke was entrusted with access to trade secret and confidential information, or that any such trade secret or confidential information exists or existed. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 60 and therefore deny them.

61.     Denied.

62.     Denied.

63.     Denied.

64.     Denied.

65.     Denied.

66.     Admitted that O'Connell formed Next Level. Denied as to the remaining allegations in paragraph 66.

67.     Admitted that, on or about May 25, 2016, O'Connell registered Next Level as a general lines agency qualified to offer life, accident health and HMO insurance with the Texas Department of Insurance.  Denied as to the remaining allegation in paragraph 67.

68.     Denied.

69.     Denied.

70.     Defendants lack knowledge or information sufficient to form a belief as to the identity of "clients and prospects" to which paragraph 70 refers and thus cannot ascertain the truth of the allegations in paragraph 70 and therefor deny them.

71.     Defendants lack knowledge or information sufficient to form a belief as to the identity of "those clients" to which paragraph 71 refers and thus cannot ascertain the truth of the allegations in paragraph 71 and therefore deny them.

72.     Denied.

73.     Denied.

74.     Denied.

75.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 75 and therefore deny them.

76.     Denied.

77. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 77 and therefore deny them.

78. Admitted that O'Connell provided a list of clients to Emina Kurti and Hooser. Denied as to the remaining allegations in paragraph 78.

79. Denied.

80. Denied.

81. Denied.

82. Admitted.

83. Denied.

84. Denied.

85. Denied.

86. Admitted.

87. Denied.

88. Denied.

89. Admitted.

90. Admitted that Next Level is an insurance agency offering insurance benefits in Texas. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 90 and therefore deny them.

91. Denied.

92. Denied.

93. Denied to the extent Plaintiffs are suggesting that such assessment was not actually the reason O'Connell contacted Meylan. Otherwise, admitted.

94.     Denied as to the allegation that any such agreement was ever "entered into." The agreement in question was never signed. Otherwise, admitted.

95.     Denied.

96.     Admitted.

97.     Admitted.

98.     Admitted.

99.     Admitted.

100.    Admitted.

101.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 101 and therefore deny them.

102.    Denied.

## COUNT I

**Breach of Duty of Loyalty (Injunctive Relief and Damages) Against O'Connell and Milke**

103.    Defendants repeat and reassert their responses to all prior paragraphs above.

104.    Admitted that O'Connell's compensation was based upon a percentage of commissions.  Denied as to the remaining allegations in paragraph 104.

105.    Denied.

106.    Denied to the extent Plaintiffs are alleging that any such restrictions existed for or were binding on Milke or O'Connell.

107.    Denied.

108.    Denied.

109.    Denied.

110.    Denied.

111.    Denied.

112.    Denied.

## COUNT II

**Failure to Maintain Confidential Information
(Injunctive Relief and Damages) Against O'Connell, Milke and Hooser**

113.    Defendants repeat and reassert their responses to all prior paragraphs above.

114.    Denied.

115.    Denied to the extent Plaintiffs are alleging that any such covenant existed for or was binding on O'Connell or Milke.

116.    Denied.

117.    Denied.

118.    Denied.

119.    Denied.

120.    Denied.

## COUNT III

**Misappropriation of Trade Secrets (Injunctive Relief and Damages)
Against Defendants O'Connell, Milke, Hooser and Next Level**

121.    Defendants repeat and reassert their responses to all prior paragraphs above.

122.    The allegations in paragraph 122 are legal conclusions to which no response is required. To the extent a response is required, the allegations in paragraph 122 are denied.

123.    The allegations in paragraph 123 are legal conclusions to which no response is required. To the extent a response is required, the allegations in paragraph 123 are denied.

124.    Denied.

125.    Denied.

126.    Denied.

127.    Denied.

128.    Denied.

129.    Denied.

130.    Denied.

131.    Denied.

132.    Denied.

133.    Denied.

134.    Denied.

135.    Denied.

136.    Denied.

137.    Denied.

138.    Denied.

<u>**COUNT IV**</u>

**Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 (Injunctive Relief and Damages) Against Defendants O'Connell, Milke, Hooser and Next Level**

139.    Defendants repeat and reassert their responses to all prior paragraphs above.

140.    The allegations in paragraph 140 are legal conclusions to which no response is required. To the extent a response is required, the allegations in paragraph 140 are denied.

141.    The allegations in paragraph 141 are legal conclusions to which no response is required. To the extent a response is required, the allegations in paragraph 141 are denied.

142.    The allegations in paragraph 142 are legal conclusions to which no response is required. To the extent a response is required, the allegations in paragraph 142 are denied.

143.    The allegations in paragraph 143 are legal conclusions to which no response is required. To the extent a response is required, the allegations in paragraph 143 are denied.

144.    Denied.

145.    Denied.

146.    Denied.

147.    Denied.

148.    Denied.

149.    Denied.

150.    Denied.

151.    Denied.

152.    Denied.

153.    Denied.

154.    Denied.

155.    Denied.

156.    Denied.

### COUNT V

**Tortious Interference with Prospective Business Relationships
(Injunctive Relief and Damage) Against All Defendants**

157.    Defendants repeat and reassert their responses to all prior paragraphs above.

158.    Denied.

159.    Denied.

160.    Denied.

161.    Denied.

162.    Denied.

163.    Denied.

164.    Denied.

## COUNT VI

**Breach of Contract of Employment Against Hollie Hooser**

165.    Defendants repeat and reassert their responses to all prior paragraphs above.

166.    Admitted that Hooser entered an employment contract with BRG on or about January 5, 2016, a copy of which is attached as Exhibit 1 to the Complaint. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 166 and therefore deny them.

167.    Admitted that Hooser was employed by BRG until August 16, 2016.  Admitted that, subsequent to August 16, 2016, Hoosier has performed services for Next Level.  Admitted that Next Level operates the same type of business as Plaintiff BRG Insurance Solutions LLC. Denied as to the remaining allegations in paragraph 167.

168.    Admitted that Next Level operates within fifty (50) miles of Plaintiffs' offices. The remaining allegations in paragraph 168 are legal conclusions to which no response is required. Defendants respectfully refer the Court to the employment contract for a full and accurate description of its contents.

169.    The allegations in paragraph 169 are legal conclusions to which no response is required. Defendants respectfully refer the Court to the employment contract for a full and accurate description of its contents.

170.    Admitted that O'Connell and Next Level are engaged in the insurance business in the state of Texas.  Denied as to the remaining allegations in paragraph 170.

171.     Admitted that Plaintiffs' counsel sent a letter to Hooser and that Next Level and O'Connell (and their counsel) are aware of the letter. Defendants respectfully refer the Court to the letter for a full and accurate description of its contents. Denied as to the remaining allegations in paragraph 171.

172.     Denied.

173.     Denied.

## COUNT VII

**Interference with Business Relationship with Customers Against All Defendants**

174.     Defendants repeat and reassert their responses to all prior paragraphs above.

175.     Denied.

176.     Denied.

177.     Denied.

178.     Denied.

179.     Denied.

## COUNT VIII

**Civil Conspiracy (Injunctive Relief and Damages) Against All Defendants**

180.     Defendants repeat and reassert their responses to all prior paragraphs above.

181.     Denied.

182.     Denied.

183.     Denied.

184.     Denied.

185.     Denied.

186.     Denied.

187.   Denied.

188.   Denied.

189.   Denied.

190.   Denied.

191.   Denied.

## JURY DEMAND

192.   Paragraph 192 of the Complaint does not contain any allegations that warrant admission or denial. To the extent that a response is required, Defendants repeat and reassert their responses to all prior paragraphs above.

## PRAYER

The Prayer of the Complaint does not contain any allegations that warrant admission or denial. To the extent that a response is required, Defendants repeat and reassert their responses to all prior paragraphs above.

## AFFIRMATIVE DEFENSES

193.   Plaintiffs fail to state a claim upon which relief may be granted.

194.   Plaintiffs' claims are barred because Plaintiffs' own acts or omissions caused or contributed to Plaintiffs' alleged injury.

195.   Plaintiffs' claims are barred because any of Plaintiffs' purported confidential information or trade secrets were independently developed or discovered.

196.   Plaintiffs' damages, if any, are a result of their own negligence or malfeasance.

197.   Plaintiffs' claims are barred by the doctrine of unclean hands.

198.   Plaintiffs' claims are barred by their failure to mitigate their alleged damages.

199.   Plaintiff's claims are barred by the doctrine of ratification.

200.    Plaintiffs' claims are barred by the doctrine of waiver.

201.    Plaintiffs' claims are barred by the doctrine of estoppel.

## COUNTERCLAIMS

Defendants and Counterclaim-Plaintiffs Daniel O'Connell ("O'Connell") and Next Level Insurance Group LLC ("Next Level") (together, "Counterclaim-Plaintiffs") assert the following Counterclaims against Plaintiffs and Counterclaim-Defendants BRG Insurance Solutions LLC, Howard Crissey & Associates, Inc. ("HCA") and Howard Crissey ("Crissey"), individually and as a sole proprietorship d/b/a Benefit Resource Group ("BRG") (collectively, "Counterclaim-Defendants"), and pursuant to Federal Rule of Civil Procedure 13, hereby state:

## PRELIMINARY STATEMENT

In their Complaint, Counterclaim-Defendants present a one-sided, often fictional, account of their relationship with O'Connell, which ignores the true origins of this dispute.

After marrying Crissey's daughter, Kate, O'Connell began working with BRG, the family insurance business, in 2006.  Although BRG was profitable, its finances were in disarray because Crissey and his wife lived beyond their means. In order to keep up with the proverbial Joneses, Crissey and his wife bought, among other things, a home in Highland Park and then Preston Hollow, a ranch, a beach condominium, luxury cars, and a $30,000 fur coat.  To fund their personal expenditures, Crissey took funds from BRG, life insurance proceeds from one of his clients, and commissions earned by O'Connell and, eventually, had to obtain a line of credit to cover payroll and overhead.  Because Crissey could not timely pay his debts, in 2015, the bank cancelled the line of credit.

During this time, Crissey frequently lost his temper at work and was known for erratic outbursts.  With the exception of Crissey's other daughter, each person in the office received a

share of hostilities from Crissey, with O'Connell frequently being treated as Crissey's whipping boy. Crissey was often verbally and physically abusive to O'Connell, slapping him in the face on three separate occasions.  O'Connell, for his part, attempted to make the best of a bad situation and worked tirelessly to develop client relationships, keep the peace at the office, and provide for his wife and four young children.

Due in large part to the contributions made by O'Connell and others, such as BRG's long time office manager, Lisa Milke, BRG was successful in spite of Crissey. During the time that O'Connell worked as an independent agent and contractor for BRG, the number of BRG clients more than doubled.  Instead of applauding O'Connell's hard work and success, Crissey criticized O'Connell's efforts. Nonetheless, while Crissey spent much of his time at his ranch, O'Connell worked to develop new business, authored articles in trade publications, and gave radio and television interviews.   In 2014, O'Connell was honored with NAIFA's Advisor Today Four Under Forty National Award.  Rather than praise his achievement, Crissey and his wife rebuked O'Connell and refused to let him display the award in his office.

For almost a decade, Crissey and his wife enjoyed the fruits of O'Connell's hard work. All the while, Crissey and his wife strung O'Connell along with false promises, improperly commingled their personal expenses with BRG, and engaged in other wrongful conduct. Now that O'Connell has left BRG and opened his own insurance agency (as he is rightfully entitled to do), their "golden goose" is gone.  In turn, Plaintiffs have asserted meritless "trade secret" claims against O'Connell and others, and have breached their obligation to pay O'Connell the compensation owed for the business that he produced. Accordingly, O'Connell and Next Level seek to recover the damages caused by Plaintiffs' breaches and other wrongful conduct.

## PARTIES

202.    Daniel O'Connell ("O'Connell") is a licensed insurance agent in the State of Texas and a resident of Dallas, Texas.

203.    Next Level Insurance Group LLC ("Next Level") is a Texas limited liability company with its principal place of business in Addison, Texas.

204.    BRG Insurance Solutions LLC is a Texas limited liability company with its principal place of business in Dallas, Texas.

205.    Howard Crissey & Associates, Inc. ("HCA") is a Texas corporation with its principal place of business in Dallas, Texas.

206.    Howard Crissey is a licensed insurance agent in the State of Texas and a resident of Dallas, Texas.  Crissey, with BRG Insurance Solutions LLC and HCA, operates an insurance agency business under the name of Benefit Resource Group ("BRG").

## JURISDICTION AND VENUE

207.    Jurisdiction is proper in this District pursuant to 28 U.S.C. §§ 1331 and 1836(c) because Plaintiffs assert a cause of action under federal law pursuant to the Defendant Trade Secrets Act, 18 U.S.C. § 1836(b).  Upon information and belief, this Court has supplemental jurisdiction over the Counterclaims pursuant to 28 U.S.C. § 1367 and Federal Rule of Civil Procedure 13.

208.    Venue for the Counterclaims is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Counterclaim-Defendants reside in the Northern District of Texas.

## FACTUAL ALLEGATIONS

**A.      O'Connell Begins Working With BRG.**

209.    O'Connell has been an independently licensed insurance agent in the State of Texas for a decade.

210.    After marrying Crissey's daughter, Kate, O'Connell began working with BRG, the family insurance business, in 2006.

211.    O'Connell was not hired by BRG as a W-2 employee; rather, O'Connell was an independent contractor to BRG for approximately eight-and-a-half years.

212.    As an independent contractor, O'Connell worked hard to develop relationships with his clients and his own marketing materials.

**B.      BRG Employs Questionable Business And Accounting Practices.**

213.    Soon after O'Connell began working with BRG, it became apparent that BRG employed questionable business practices, particularly with respect to accounting.  Everyone at BRG operated on a draw, salary, or hourly basis except for Crissey.

214.    Upon information and belief, as early as 2006, the majority of commissions at BRG were being paid into Crissey's personal bank account, to which Crissey's wife (O'Connell's mother-in-law) also had access, despite not being a BRG employee.

215.    Upon information and belief, Crissey referred to this personal bank account as his sole proprietor account and routinely used BRG funds to pay for personal expenses including but not limited to expenses relating to Crissey's ranch.

216.    For years, Crissey and O'Connell had disagreements over BRG's financial records.  O'Connell repeatedly requested financial and accounting information regarding BRG,

but Crissey consistently denied O'Connell access to BRG's books and records (to the extent BRG maintained books and records).

217.    Upon information and belief, Crissey and BRG comingled accounts, including but not limited to comingling accounts with Crissey's wife and her calligraphy business, Pink Ink Scripts.

218.    Crissey was openly hostile with BRG's employees. Crissey would yell at BRG employees and pound on his desk, which created an uncomfortable working environment and made it difficult for BRG to retain competent administrative staff.   When confronted about his temper, Crissey would acknowledge that he was aware of his behavior, yet he would not apologize or correct his actions.   This lasted for the duration of O'Connell's tenure at BRG.

219.    In 2014, O'Connell became employed by BRG, but continued to use the information that he had previously developed as an independent contractor, including his knowledge of his clients and marketing materials.

220.    In 2014, O'Connell received a minority ownership interest in HCA.

**C.**    **Conditions At BRG Get Worse.**

221.    During this period, O'Connell became a significant contributor at BRG. Although O'Connell never entered into a formal employment agreement with BRG or any BRG affiliate, Crissey, on behalf of BRG, made representations to O'Connell about his future opportunities at BRG such as promotions and ownership interests.

222.    Crissey told O'Connell numerous times that Crissey was going to make O'Connell a partner in the business.   Crissey represented to O'Connell that he would draft a memorandum of understanding so that it would be clear that O'Connell would take over the business when Crissey retired, became incapacitated, or passed away.

223.    In or about August 2012, O'Connell approached Crissey to discuss parting ways because O'Connell had learned that Crissey and BRG were paying illegal commissions to Rory Harbison, Crissey's daughter, who was not a licensed agent ("Rory").  Crissey told O'Connell that nothing was wrong and threatened to sue O'Connell if he left BRG.

224.    Upon information and belief, and unbeknown to O'Connell at the time, BRG and Crissey continued to pay illegal commissions to Rory in violation of applicable law and concealed the illegal commissions from O'Connell.

225.    Subsequently, Crissey took $10,000 from BRG, funds which were supposed to subject to a "true up" agreement with O'Connell, to fund the formation of a new company, BRG Insurance Solutions LLC ("BIS"), with his wife, Bridget.  Upon information and belief, one reasons Crissey formed BIS was to create a situation in which O'Connell would have to buy the company from Crissey's wife in the event Crissey passed away.

226.    Toward the end of 2013, Crissey took away O'Connell's bonuses, which would have been paid in the spring of 2014.  Crissey's and O'Connell's original compensation plan provided that Crissey received 100% of the carrier bonuses that Crissey's production created and that Crissey got 50% of the carrier bonuses that O'Connell's production created, leaving O'Connell with 50% of the carrier bonuses from his production.

227.    Crissey informed O'Connell that Rory had heard about the types of bonuses that Crissey and O'Connell were supposed to receive.  Crissey asked O'Connell what percentage of his bonuses he intended to give to Rory, to which O'Connell answered none.  As a result, Crissey canceled all bonuses and put those funds toward a 401K plan.  Because O'Connell was an independent contractor at the time, he was not eligible to participate in the 401K plan, and received no part of his carrier bonus.

228.    In or about December 2014, Crissey took out a $40,000 loan to pay himself a bonus that he used to fund his retirement account.   In or about January 2015, Crissey and O'Connell split the net revenue of BRG, and O'Connell had to repay 35% of Crissey's loan out of his own pocket.

229.    At the end of 2015, BRG purportedly trued up its books, and Crissey claimed that O'Connell owed him $15,000.  Crissey falsely represented to O'Connell that $15,000 was owed due to an increase in BRG's expenses.   After hiring a new accountant, however, it was discovered that Crissey had been double counting O'Connell's draw in salary and then backing out again when "truing up" the books. Crissey's double counting concealed the fact that additional amounts were actually owed to O'Connell.

230.    In early 2016, further disagreements surfaced regarding questionable business practices at BRG and by Crissey.  For example, additional accounting errors and irregularities were discovered in connection with "truing up" the books in the First Quarter of 2016.

231.    Additionally, Crissey's interactions with employees at BRG became increasingly hostile, and in one such moment, Crissey terminated Lisa Milke, who had been BRG's office manager for seventeen years.

232.    As O'Connell questioned more and more discrepancies regarding his compensation and the financial books and records at BRG, Crissey became more hostile toward O'Connell and openly bullied O'Connell in front of BRG employees and O'Connell's family.

233.    Upon information and belief, over the last two years, Crissey pulled in excess of $1.4 million out of BRG, which generated approximately $2.6 million during that period.  The $1.4 million does not include the personal expenses that Crissey ran through BRG including, but

not limited to, Crissey's home owner's insurance, his internet, his television bills for three homes, and his house cleaning and lawn service charges.

234.    Over the years, O'Connell had approached Crissey multiple times to discuss buying Crissey's interest in BRG or parting ways and each time Crissey convinced O'Connell to stay with BRG by falsely representing that he would make O'Connell a partner in the business.

235.    Upon information and belief, Crissey never had any intention to make O'Connell a partner in BRG.

**D.    O'Connell Forms His Own Insurance Agency.**

236.    O'Connell's last day at BRG was July 25, 2016.

237.    Pursuant to his compensation agreement with BRG and Crissey, O'Connell was to be paid a percentage of the commissions received on the business that he produced.

238.    BRG has failed to pay O'Connell commissions owed for the second half of July 2016, and commissions owed to O'Connell since July 2016.

239.    Given that he had (and has) no non-competition agreement with BRG, O'Connell formed his own insurance agency, Next Level.   Naturally, O'Connell informed his clients that he was no longer at BRG and had started Next Level. O'Connell did not rely on BRG customer information to reach out to his clients.

240.    Because of the relationships that he has developed over the years, since O'Connell left BRG, a number of other clients or former clients have reached out to O'Connell on their own initiative.  Since O'Connell left BRG, a number of his former clients have asked O'Connell and/or Next Level to be their insurance agent and/or broker of record.

241.    O'Connell and Next Level are competitors of BRG, just like any other insurance agent and agency.

242.    On August 25, 2016, Crissey sent a disparaging email and letter to BRG and Next Level clients, accusing O'Connell of a breach of trust and lack of integrity.

243.    It appears that Crissey's self-help act of desperation has backfired, as numerous BRG clients found Crissey's email unprofessional and distasteful and have reached out to O'Connell and Next Level in response. Examples of responses include:

> Howard, Thanks for your email, but I have never had any dealings with you at all. In fact, I have only met you once in the seven years we have used BRG. I have only worked with Danny and Lisa.  Neither one of them is there anymore. When I have gotten a call from other people they have had zero idea of who we are and what is going on. I found your letter and email below to be in very poor taste and have a hard time understanding it when the two people that did ALL the work no longer work there. For us, this is a relationship business and I have no relationship with you. None!

> * * *

> Dear Howard, I had to let a few days pass before I responded to what I believe is an inappropriate email. Your family issues are just that, FAMILY ISSUES. . . . I have worked very closely with Danny for a [*sic*] several years.  He has always displayed integrity, honesty and professionalism. . . . I am very disappointed by your actions in sending out this email.

> * * *

> Hi Danny, . . . I find it shocking that [Crissey] would stoop to implying dishonesty on your part without any facts to back it up! I'm very sorry that you and your family are having to walk though [*sic*] this trial, but I have no doubt that you will handile it with dignity and integrity.  Bitterness and anger only holds a person captive, so Howard [Crissey] is the one for whom I truly feel sorry.

244.    Additional BRG clients have reached out to O'Connell and Next Level because their communications and/or requests to BRG and Crissey have gone unanswered.

## FIRST COUNTERCLAIM FOR RELIEF
### (Breach of Contract)

245.    O'Connell repeats and realleges paragraph 202 through 244 above.

246.    There is a valid, enforceable contract regarding compensation between O'Connell, on the one hand, and BRG and Crissey, on the other hand.

247.    O'Connell is a proper party to sue for breach of the contract regarding his compensation.

248.    O'Connell performed his contractual obligations by working as an insurance broker with BRG.

249.    BRG and Crissey breached their contract with O'Connell at least by failing to pay him all amounts owed under the parties' agreement.

250.    BRG's and Crissey's breach caused O'Connell's injury.  Accordingly, O'Connell seeks actual damages, interest, and court costs.

## SECOND COUNTERCLAIM FOR RELIEF
### (Money Had And Received)

251.    O'Connell repeats and realleges paragraph 202 through 244 above.

252.    Crissey and BRG hold unpaid compensation owed to O'Connell.  Additionally, Crissey and BRG allocated and charged improper expenses to O'Connell, including but not limited to personal expenses of Crissey and his wife, overhead charges related to Crissey's wife's calligraphy business, and commissions improperly allocated to Crissey instead of O'Connell.

253.    The unpaid compensation and an amount equal to the improper expenses to O'Connell, including but not limited to personal expenses of Crissey and his wife, overhead charges related to Crissey's wife's calligraphy business, and commissions improperly allocated to Crissey instead of O'Connell, belong to the O'Connell in equity and good conscience.

254.    Accordingly, O'Connell seeks actual damages, exemplary damages in light of Crissey's and BRG's fraud and malice in allocating improper expenses to O'Connell, interest, and court costs.

### THIRD COUNTERCLAIM FOR RELIEF
**(Breach of Fiduciary Duty)**

255.    O'Connell repeats and realleges paragraph 202 through 244 above.

256.    As the majority shareholder and president of HCA, Crissey owed O'Connell fiduciary duties in relation to O'Connell's minority interest in HCA.

257.    Crissey breached his fiduciary duties to O'Connell by failing to pay him certain commissions, charging him improper expenses such as Crissey's and Crissey's wife's personal expenses, commingling his personal funds and accounts with funds and accounts belonging to BRG, and permitting BRG to engage in improper accounting practices, including, but not limited to, allocating improper portions of O'Connell's production and commissions to Crissey and others to Crissey's benefit.  Furthermore, Crissey improperly usurped corporate opportunities to the detriment of O'Connell by moving commissions and revenue from HCA to BRG Insurance Solutions LLC in order to avoid paying O'Connell his rightful portion of those commissions and revenue.

258.    Crissey's breach of his fiduciary duties resulted in (1) injury to O'Connell, and (2) benefit to Crissey.   Accordingly, O'Connell seeks actual damages, exemplary damages, an accounting, interest, and court costs.

### FOURTH COUNTERCLAIM FOR RELIEF
**(Fraud)**

259.    O'Connell repeats and realleges paragraph 202 through 244 above.

260.    Crissey told O'Connell numerous times that Crissey was going to make O'Connell a partner in the business. Crissey told O'Connell that he would draft a memorandum of understanding so that it would be clear that O'Connell would take over the business when Crissey retired, became incapacitated, or passed away.

261.    Crissey's representation that he would make O'Connell a partner was material.

262.    Upon information and belief, when Crissey made the representation that he would make O'Connell a partner, Crissey knew the representation was false and that he had no intention of making O'Connell a partner.

263.    Upon information and belief, Crissey made the representation that he would make O'Connell a partner with the intent that O'Connell act on it and continue to work for BRG.

264.    O'Connell relied on Crissey's representation that Crissey would make him a partner by continuing to work for BRG instead of seeking employment elsewhere or starting his own agency sooner.

265.    Crissey's representation caused O'Connell injury because Crissey refused to make O'Connell a partner despite his promises to do so and never presented O'Connell with a memorandum of understanding to make clear that O'Connell would take over the business when Crissey retired, became incapacitated, or passed away.

266.    As a direct and proximate result of Crissey's refusal to make O'Connell a partner despite Crissey's promises to do so, O'Connell seeks actual damages, consequential damages, exemplary damages, interest, and court costs.

## FIFTH COUNTERCLAIM FOR RELIEF
### (Negligent Misrepresentation)

267.    O'Connell repeats and realleges paragraph 202 through 244 above.

268.     Crissey told O'Connell numerous times in the course of Crissey's business at BRG that Crissey was going to make O'Connell a partner in the business.

269.     Crissey supplied false information for the guidance of O'Connell.  For example, Crissey told O'Connell that he would draft a memorandum of understanding so that it would be clear that O'Connell would take over the business when Crissey retired, became incapacitated, or passed away.

270.     Crissey did not exercise reasonable care or competence in communicating to O'Connell that he would make O'Connell a partner in the business.

271.     O'Connell justifiably relied on Crissey's representations that he would make him a partner in the business by continuing to work for BRG instead of seeking employment elsewhere or starting his own agency sooner.

272.     Crissey's negligent representation proximately caused O'Connell's injury. Accordingly, O'Connell seeks actual damages, consequential damages, exemplary damages, interest, and court costs.

## SIXTH COUNTERCLAIM FOR RELIEF
### (Accounting)

273.     O'Connell repeats and realleges paragraph 202 through 244 above.

274.     O'Connell requested that BRG and Crissey provide necessary information regarding BRG's financials on a number of occasions.

275.     Despite O'Connell's requests, BRG and Crissey have failed to provide access to BRG's books and records or necessary financial information.

276.     Thus, because BRG and Crissey have possession, custody, or control over commissions that belong to O'Connell and owe O'Connell certain extra-contractual and/or

fiduciary duties, O'Connell is entitled to equitable relief, including access to all records and a full accounting.

## SEVENTH COUNTERCLAIM FOR RELIEF
### (Attorneys' Fees)

277.    O'Connell repeats and realleges paragraph 202 through 244 above.

278.    Counterclaim-Defendants brought trade secret misappropriation claims under the Texas Uniform Trade Secrets Act and the Defendant Trade Secrets Act in bad faith.

279.    Pursuant to TEX. CIV. PRAC. & REM. CODE § 38.01, TEX. CIV. PRAC. & REM. CODE § 134A.005(1), and 18 U.S.C.S. § 1836(b)(3)(D), Counterclaim-Plaintiffs seek reasonable attorneys' fees.

## PRAYER

WHEREFORE, having stated in their First Amended Answer, Affirmative Defenses, and Counterclaims, Defendants and Counterclaim-Plaintiffs respectfully request that the Court enter judgment in their favor and against Plaintiffs and Counterclaim-Defendants:

(i)     Dismissing the Complaint in its entirety with prejudice and without leave to replead;

(ii)    Awarding Defendants and Counterclaim-Plaintiffs damages, including actual, consequential, and exemplary damages, in an amount to be determined at trial plus interest;

(iii)   Awarding Defendants and Counterclaim-Plaintiffs interest in an amount according to law;

(iv)    Awarding Defendants and Counterclaim-Plaintiffs reasonable attorneys' fees and costs incurred to defend and/or prosecute the claims in the action as permitted by law or in equity; and

(v)     Awarding Defendants and Counterclaim-Plaintiffs such other and further relief as the Court deems just and proper.

Date:  November 14, 2016                    Respectfully submitted,

                                            **GARDNER HAAS PLLC**

                                            By: /s/ *Maeghan E. Whitehead*
                                                 Michael S. Gardner
                                                 State Bar No. 24002122
                                                 mg@gardnerhaas.com
                                                 Eric P. Haas
                                                 State Bar No. 24050704
                                                 eh@gardnerhaas.com
                                                 Maeghan E. Whitehead
                                                 State Bar No. 24075270
                                                 mw@gardnerhaas.com

                                            2828 Routh St., Ste. 660
                                            Dallas, Texas 75201
                                            Telephone: (214) 415-3473

                                            **ATTORNEYS FOR DEFENDANTS AND
                                            COUNTERCLAIM-PLAINTIFFS
                                            DANIEL O'CONNELL AND NEXT LEVEL
                                            INSURANCE AGENCY LLC**

<u>**CERTIFICATE OF SERVICE**</u>

        I hereby certify that, on November 14, 2016, I served a true and correct copy of the
foregoing document on the following counsel of record via the CM/ECF system:

Richard J. Mathews                          Jack G. B. Ternan
State Bar No. 28038344                      State Bar No. 24060707
835 E. Lamar Boulevard, #447                jt@ternanlawfirm.com
Arlington, Texas 76011                      Ternan Law Firm, PLLC
Telephone: (817) 251-6706                   1400 Preston Road, Suite 400
Email: richardj.mathews@gmail.com           Plano, Texas 75093
                                            Telephone: (972) 665-9939

                                            /s/ *Maeghan E. Whitehead*
                                            Maeghan E. Whitehead