IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRG INSURANCE SOLUTIONS, LLC, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:16-CV-2448-N |
| DANIEL O'CONNELL, *et al.*, | § § § | |
| Defendants. | § | |

## ORDER

This Order addresses Defendants Daniel R. Meylan and Tapadero Partners, LLC's (collectively, "Meylan Defendants") motion to dismiss [22]; Defendant Lisa Milke's motion to dismiss [27]; Defendant Hollie Hooser's motion to dismiss [30]; and Plaintiffs BRG Insurance Solutions, LLC ("BRG"), Howard Crissey & Associates Agency, Inc. ("HCA"), and Howard Crissey's (collectively, "Plaintiffs") motion to strike [45]. The Court grants in part and denies in part the motions to dismiss, and denies the motion to strike.

### I. ORIGINS OF THE DISPUTE

This dispute arises out of Defendant Daniel O'Connell's employment with BRG, an insurance business offering health benefit and insurance services and solutions to various businesses, and his subsequent creation of and employment with Defendant Next Level Insurance Group, LLC ("Next Level"). Crissey hired O'Connell, his son-in-law, in 2006 as an agent for BRG. As an agent, O'Connell was responsible for managing and maintaining client relationships, finding prospective clients, handling referrals, executing renewals, and

ORDER – PAGE 1

"nurturing the good will that Plaintiffs had developed with the accounts . . . ." Pls.' First Am. Compl. ¶ 44 [20]. O'Connell and Milke, BRG's office manager, developed an Employee Agreement ("EA") for subsequent BRG employees, which included confidentiality, nondisclosure, and nonsolicitation expectations, as well as a noncompete provision. *See id*. ¶¶53–56. Though O'Connell and Milke seemingly did not sign this EA themselves, others did, including administrative assistant Hollie Hooser.

Milke's employment ended on January 28, 2016, after over seventeen years of employment with BRG. After Milke left BRG, Plaintiffs allegedly became aware of clients that O'Connell had serviced while naming himself as the sole agent and receiving all associated commissions. Additionally, Plaintiffs allege that O'Connell sent a list of clients that he claimed were his personal clients (the "DJO List") to Hooser and BRG employee Emina Kurti, requesting that they keep the list secret from Crissey. *See id*. ¶ 78–79. Plaintiffs allege that O'Connell, with the help of Milke and Hooser, "started his own competing insurance business and made presentations and wrote insurance on at least several dozen [BRG] clients and prospects utilizing [BRG] resources including confidential information . . . ." *Id*. ¶ 66. Plaintiffs allege that O'Connell registered his competing business, Next Level, while still employed by BRG. Plaintiffs additionally allege that O'Connell's actions date back to at least 2006, when BRG and O'Connell retained the Meylan Defendants for consulting services. The Meylan Defendants allegedly provided a proposal for the reorganization of the operations, system, and staff of BRG, as well as a proposal to assist O'Connell with the creation of a new operating agency for the purposes of

acquiring the assets and controlling interest in BRG.  BRG terminated O'Connell's employment on July 25, 2016.

Plaintiffs now bring suit against O'Connell and Milke for breach of duty of loyalty (Count I); against O'Connell, Milke, and Hooser for failure to maintain confidential information (Count II); against O'Connell, Milke, Hooser, and Next Level for misappropriation of trade secrets (Count III); against O'Connell, Milke, Hooser, and Next Level for violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA") (Count IV); against O'Connell, Milke, Hooser, Next Level, and the Meylan Defendants for tortious interference with prospective business relationships (Count V); against Hooser for breach of contract (Count VI); against O'Connell, Milke, Hooser, Next Level, and the Meylan Defendants for interference with business relationships with customers (Count VII); and against O'Connell, Milke, Hooser, Next Level, and the Meylan Defendants for civil conspiracy (Count VIII).  The Meylan Defendants and Milke move the Court to dismiss all respective claims against them.  Hooser moves the Court to dismiss Counts II, III, IV, V, VII, and VIII against her.

## II.  THE RULE 12(B)(6) STANDARD

When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief.  *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within certain limited categories. First, "[a] court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and

ORDER – PAGE 4

may be considered in a 12(b)(6) dismissal proceeding." *Ferrer*, 484 F.3d at 780.  Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)).    Finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "the district court took appropriate judicial notice of publicly-available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### III.  THE COURT GRANTS IN PART AND DENIES IN PART THE MEYLAN DEFENDANTS' MOTION TO DISMISS

#### A.  *Plaintiffs Fail to State a Claim Against the Meylan Defendants for Tortious Interference with Prospective Business Relationships*

Although Plaintiffs do not identify the Meylan Defendants by name, Count V alleges that "Defendants intentionally interfered with the prospective contractual relationship between [BRG] and clients and prospective clients by inducing O'Connell, Hooser and Milke to breach their fiduciary duty and responsibilities by disclosing and using confidential company and client information and soliciting current company clients and joining a competitive business while still employed by [BRG] . . . ."  Pls.' First Am. Compl. ¶ 160.

ORDER – PAGE 5

To support these claims, Plaintiffs allege that the Meylan Defendants provided a proposal to assist in the reorganization of BRG, including a detailed business plan. *See id.* ¶ 97. Plaintiffs allege that the Meylan Defendants also sent a proposal to O'Connell to assist with the creation of a new agency, which would acquire the assets and controlling interest in BRG. *See id.* ¶ 98. Plaintiffs claim that such communications were intentionally kept secret from Crissey, and that the Meylan Defendants had a contractual and fiduciary responsibility to Plaintiffs to not engage in secret discussions with O'Connell to the financial detriment of BRG. *See id.* ¶ 102.

To prevail on a claim for tortious interference with prospective business relations, a plaintiff must establish that: (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct: (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff's injury; and (5) the plaintiff suffered actual damages or loss as a result. *See Sanger Ins. Agency v. HUB Intern., Ltd.*, 802 F.3d 732, 748 (5th Cir. 2015) (citing *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013)).

The Meylan Defendants argue that Plaintiffs have failed to plausibly allege proximate cause, tortious or unlawful conduct, or any intentional interference by the Meylan Defendants. Without directly addressing the arguments of the Meylan Defendants, Plaintiffs

respond that the Meylan Defendants "knew that the use of confidential information, prospective client lists and BRG resources was a violation of fiduciary duty and not only failed to disclose that to BRG, but actively encouraged the use of BRG confidential information to steal BRG clients and prospective clients." Pls.' Resp. to Meylan Defs.' Mot. to Dismiss 7 [28].[1]

Plaintiffs have not alleged facts to plausibly support the inference that the Meylan Defendants' conduct was independently tortious or unlawful. Plaintiffs allege only that the Meylan Defendants provided proposals to both BRG and O'Connell, in which they provided a plan for reorganization to BRG and a plan to acquire the assets of BRG to O'Connell. In Texas, "an at-will employee may properly plan to go into competition with his employer and may take active steps to do so while still employed . . . . Such an employee has no general duty to disclose his plans to his employer." *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 284 (5th Cir. 2007) (internal quotation marks and citations removed). Though Plaintiffs allege that O'Connell and Milke ultimately went beyond the realm of legitimate competition, Plaintiffs have not plausibly alleged that the Meylan Defendants did more than provide a proposal to O'Connell of how he could potentially start his own agency, which would acquire BRG's assets. Such action by the Meylan Defendants falls within the realm of legitimate competition, and is not independently tortious or unlawful. Further, Plaintiffs have not pled any facts to support their conclusory statement that the Meylan Defendants had a

---

[1]The Court notes that Plaintiffs failed to designate page numbers in this response.

contractual and fiduciary responsibility to Plaintiffs to not engage in secret discussions with O'Connell. Accordingly, the Court grants the Meylan Defendants' motion to dismiss Plaintiffs' claims against them for tortious interference with prospective business relationships.

### B. Plaintiffs Fail to State a Claim Against the Meylan Defendants for Tortious Interference with Existing Business Relationships

Plaintiffs allege that the Meylan Defendants "encouraged the solicitation, transfer and appropriation of Plaintiffs' customers for the purpose of reducing the value of Plaintiffs' business." Pls.' First Am. Compl. ¶ 177.

To prevail on a claim for tortious interference with existing business relationships, a plaintiff must establish: "(1) unlawful actions undertaken without justification or excuse; (2) with intent to harm; and (3) actual damages." *Apani Southwest, Inc. v. Coca-Cola Enterprises, Inc.*, 300 F.3d 620, 634 (5th Cir. 2002).[2] Though a plaintiff need not prove the existence of a valid contract, a plaintiff must show that the defendant's interference is motivated by malice. *See id.*

The Meylan Defendants move the Court to dismiss Plaintiffs' claims because Plaintiffs have not identified a wrongful act of the Meylan Defendants, because the Plaintiffs have not pled an intent to harm, and because the Plaintiffs' theory is not plausible. Plaintiffs

---

[2]Though the Court is not convinced that Plaintiffs intend to bring a claim for tortious interference with existing business relationships separate from a claim for tortious interference with existing contracts, the Defendants do not raise this argument. Accordingly, the Court uses the elements for a claim for tortious interference with existing business relationships as set forth in *Apani*.

claim they have in fact stated a claim of tortious interference with existing business relationships because they pled that the Meylan Defendants conspired with O'Connell and Next Level to steal BRG clients, which would reduce the fair market value of BRG so that O'Connell or the Meylan Defendants could purchase BRG at a reduced price. Plaintiffs also allege for the first time that the Meylan Defendants interfered in the business relationship between BRG and its employees by encouraging them to breach their fiduciary duties. Because Plaintiffs do not plead the latter theory in their Amended Complaint, the Court will not consider it.

Plaintiffs have not alleged facts to support the inference that the Meylan Defendants' conduct was unlawful, nor that they took actions without justification or excuse. Plaintiffs have not plausibly alleged that the Meylan Defendants did more than provide a proposal to O'Connell of how he could potentially start his own agency, which would acquire BRG's assets. Such action by the Meylan Defendants falls within the realm of legitimate competition, and is not in itself unlawful. Further, Plaintiffs have not pled any facts to support their conclusory statement that the Meylan Defendants had a contractual and fiduciary responsibility to Plaintiffs not to engage in undisclosed discussions with O'Connell. Accordingly, the Court grants the Meylan Defendants' motion to dismiss Plaintiffs' claims against them for tortious interference with existing business relationships.

### C. *Plaintiffs State a Claim Against the Meylan Defendants for Civil Conspiracy*

Plaintiffs allege that the Defendants had a meeting of the minds on a course of action that included "unfairly deceiving and stealing [BRG's] clients and employees by misappropriating and using Plaintiffs [sic] confidential and trade secret information." Pls.' First Am. Compl. ¶ 182. Additionally, Plaintiffs allege that the Meylan Defendants "held meetings and communicated with Defendant O'Connell for the purpose of furthering their conspiracy with Defendant O'Connell to establish a competing business and to make plans by which they and/or O'Connell could obtain the purchase of all or a large portion of Plaintiffs' customers and businesses at a reduced price by driving down the value of Plaintiffs' business." *Id.* ¶ 185. Finally, Plaintiffs allege that the Meylan Defendants induced, encouraged, and assisted O'Connell in breaching his fiduciary duty to Plaintiffs. *See id.* ¶ 187. Plaintiffs attach an e-mail from Meylan to O'Connell, in which Meylan states that he is attaching two proposals for O'Connell's review. Meylan says the fact that he is sending both proposals to O'Connell ahead of time is "obviously to be kept between [them]." Pls.' First Am. Compl., Ex. 2 at 1 [20-1]. Meylan states that one proposal, for Crissey, is to work on fixing operational and systems challenges within BRG. The other proposal, which Meylan posits would be easier, is to establish O'Connell's own agency, either by getting Crissey to agree to a sale, or by having O'Connell transition to his own agency.

To prevail on a claim for civil conspiracy in Texas, a plaintiff must establish: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object

or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result." *Wackman v. Rubsamen*, 602 F.3d 391, 408 (5th Cir. 2010).  Further, civil conspiracy "depends on participation in an underlying tort."  *Homoki v. Conversion Services, Inc.*, 717 F.3d 388, 402 (5th Cir. 2013).

The Meylan Defendants argue that Plaintiffs never identify the object or purpose of the purported conspiracy, that Plaintiffs did not identify an unlawful purpose or unlawful means that the Meylan Defendants agreed to, and that Plaintiffs did not allege that the Meylan Defendants knew or had reason to know that the other Defendants intended to breach their obligations.  Plaintiffs, however, argue that they pled the purpose of the conspiracy (to purchase Plaintiffs' customers and businesses at a reduced price by driving down the value of Plaintiffs' business); that they pled a meeting of the minds by stating that the Meylan Defendants encouraged the breach of the other Defendants' fiduciary duties, and by stating that the Meylan Defendants met with O'Connell to establish a competing business; and that they pled that the Meylan Defendants specifically conspired to engage in actions to unfairly deceive BRG and steal their clients, which shows that the Meylan Defendants knew their actions were wrongful.

The Court has already held that Plaintiffs failed to state a claim for tortious interference with prospective or existing business relationships.  It thus appears that the remaining underlying tort Plaintiffs seem to claim is inducing O'Connell and Milke to breach their fiduciary duties.  "In Texas, third parties who knowingly induce a fiduciary to breach

a duty, or who participate in the breach, can be held liable for breach of fiduciary duty as a joint tortfeasor." *Bancroft Life & Cas. ICC, Ltd. v. GRBR Ventures, L.P.*, 12 F.Supp.3d 980, 995 (S. D. Tex. 2014).

The Court agrees with Plaintiffs that they have explicitly pled the alleged object of the conspiracy – to purchase Plaintiffs' customers and businesses at a reduced price by driving down the value of Plaintiffs' business. *See* Pls.' First Am. Compl. ¶ 185. "Proof of intent to participate in the conspiracy is necessary to meet the 'meeting of the minds' element." *Wackman*, 602 F.3d at 408. Intent, however, may be proven by circumstantial evidence and reasonable inference. *See id*. Plaintiffs attach to their complaint an e-mail between Meylan and O'Connell in which the Meylan Defendants provided O'Connell with a number of options: restructuring the existing agency, getting Crissey to agree to sell the business to O'Connell, or transitioning to a new agency altogether. Meylan and O'Connell additionally share that the information had not been sent to Crissey at the time. Though not explicit, this evidence paired with Plaintiffs' allegations that the Meylan Defendants met with O'Connell is enough to plausibly suggest a meeting of the minds through reasonable inference.

Additionally, Plaintiffs have sufficiently pled an unlawful overt act by the Meylan Defendants. Plaintiffs claim that the Meylan Defendants encouraged the wrongful acts of O'Connell. Such allegations are plausible, particularly in light of the attached e-mail from the Meylan Defendants, in which they provide O'Connell with a proposal for starting a new agency. As stated previously, in Texas, a third party may be held liable for a breach of

fiduciary duty if they have knowingly encouraged or participated in the breach. Finally, Plaintiffs allege that this conspiracy has caused Plaintiffs to incur damages. Accordingly, the Court denies the Meylan Defendants' motion to dismiss Count VIII against them.

### IV. THE COURT GRANTS IN PART AND DENIES IN PART MILKE'S AND HOOSER'S MOTIONS TO DISMISS

#### A. *Plaintiffs Have Satisfied the Rule 8 Pleading Standards*

Milke and Hooser initially move the Court to dismiss Plaintiffs' claims because Plaintiffs grouped Defendants together rather than specifying the basis of their claims against each Defendant, and because Plaintiffs incorporated by reference the facts and allegations of preceding counts in each count of the First Amended Complaint.

"Lumping defendants together is insufficient to state a claim against any of them." *Brown v. ASC Mortgage/U.S. Bank Nat. Ass'n ex rel. Structured Asset Inv. Loan Trust*, 2015 WL 5559441, at *2 (N.D. Tex. 20150 (citing *Chyba v. EMC Mortgage Corp.*, 450 F. App'x 404, 406 (5th Cir. 2011)). Courts have dismissed complaints where a plaintiff makes no attempt to distinguish the actions of any defendant. *See id.* Here, though Plaintiffs often refer to multiple defendants at once, Plaintiffs only do so when alleging that more than one defendant was actually engaged in a particular action. The Court cannot say that Plaintiffs have made no attempt to distinguish the actions of the Defendants.

"Shotgun pleading" refers to a pleading which "sets forth an excessive number of facts, and then adopts them in conclusory fashion to a number of legal claims, with the result that each claim includes facts that are not material to that claim." *Price v. America's*

*Servicing Co.*, 2013 WL 1914939, at *6 n.4 (N.D. Tex. 2013) (quoting *Jones v. Herlin*, 2013 WL 823420, at *3 (W.D. La. 2013)).  Though Plaintiffs indeed incorporate previous paragraphs into each of their counts, the Court does not find it cumbersome here to determine which factual allegations support each claim for relief.  Accordingly, the Court denies Milke's and Hooser's respective motions to dismiss for failure to satisfy Rule 8.

### B.  Plaintiffs State a Claim for Breach of Duty of Loyalty (Count I) against Milke and Failure to Maintain Confidential Information (Count II) Against Milke and Hooser

Plaintiffs bring Count I, breach of duty of loyalty, against O'Connell and Milke. Plaintiffs allege that Milke was obligated not to engage in outside business activity without written authorization, not to compete with BRG, not to solicit anyone to compete with BRG, not to prepare to compete with BRG, and not to engage in any conduct reasonably expected to harm the interests of BRG.  *See* Pls.' First Am. Compl. ¶ 105.  Plaintiffs claim that Milke breached her duty of loyalty by directly providing services to or acting on behalf of a competing entity, including Next Level, during and after her employment with BRG. Plaintiffs bring Count II, failure to maintain confidential information, against O'Connell, Milke, and Hooser.  Plaintiffs allege that O'Connell, Milke, and Hooser had a fiduciary duty to maintain the confidentiality of all confidential information and not to engage in self-dealing.  Plaintiffs claim that Milke used, disclosed, and plans to further use and disclose BRG's confidential information to benefit O'Connell's competing business.  Though Plaintiffs do not allege specifics of their claim against Hooser under Count II, Plaintiffs do allege that O'Connell and Next Level are actively soliciting BRG clients and potential clients

ORDER – PAGE 14

through O'Connell's, Hooser's, and Milke's use of BRG trade secret and confidential information.  *See id.* ¶ 92.

"Although Texas case law does not consistently refer to an employee's 'duty of loyalty' *per se*, Texas law recognizes that an employee owes an employer fiduciary duties . . . ."  *McGowan & Co., Inc. v. Bogan*, 93 F.Supp.3d 624, 652 (S.D. Tex. 2015).  Additionally, Plaintiffs frame their claim for failure to maintain confidential information as a breach of fiduciary duty by O'Connell, Milke, and Hooser.  *See* Pls.' First Am. Compl. ¶ 114.  Accordingly, the Court construes Plaintiffs' claims for breach of duty of loyalty and failure to maintain confidential information (Counts I and II) as a claim for breach of fiduciary duty under Texas law.  *See McGowan*, 93 F.Supp.3d at 652 (construing an employer's claim for breach of duty of loyalty as a claim for breach of fiduciary duty under Texas law).

The elements for a claim for breach of fiduciary duty are: "(1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant."  *Navigant*, 508 F.3d at 283.

Milke moves the Court to dismiss Counts I and II against her because Plaintiffs have not provided facts to support the basis for her alleged duty of loyalty or obligation to maintain confidential information, and because Milke is not subject to an employment agreement with the Plaintiffs.  Further, Milke claims that Plaintiffs' vague allegations that

ORDER – PAGE 15

she provided services to a competing entity and disclosed confidential information to Next Level are unadorned and insufficient to support a cause of action against her. Milke notes that Plaintiffs do not identify what services Milke provided or what confidential information she allegedly disclosed. Hooser moves the Court to dismiss Count II against her because Plaintiffs have not demonstrated a fiduciary relationship between Hooser and the Plaintiffs, because Plaintiffs' allegations under Count II refer only to O'Connell and Milke, and because Plaintiffs do not identify any confidential information that Hooser allegedly disclosed.

An informal fiduciary relationship may arise between an employee and employer in Texas, which generally encompasses good faith, fair dealing, integrity, and fidelity. *See id*. "When a fiduciary relationship of agency exists between an employee and employer, the employee has a duty to act primarily for the benefit of the employer in matters connected with his agency." *Id*. (quoting *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 510 (Tex.App.–Houston [1st Dist.] 2003, no pet.). Though an employee retains the right to prepare to compete with his or her employer, an employee may not appropriate trade secrets from his or her employer, solicit his or her employer's customers during his employment, carry away confidential information (including customer lists), nor act at the expense of his or her employer by using the employer's funds or employees for personal gain. *See id*. at 284 (quoting *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 199 (Tex. 2002)).

Plaintiffs allege that Milke "was working for and providing Plaintiffs' confidential information to O'Connell to be used to steal clients from [BRG] while she was employed by

ORDER – PAGE 16

[BRG] and/or to assign all commission amounts attributable to [BRG] clients to O'Connell." Pls.' First Am. Compl. ¶ 64. Plaintiffs also allege that Hooser, along with Milke and O'Connell, is using BRG trade secret and confidential information to steal clients for O'Connell and Next Level. *See id*. ¶ 92. Taken as true, these allegations are sufficient to support a claim for breach of fiduciary duty, including duties of loyalty or to maintain confidential information. Plaintiffs have also alleged damages attributable to the breach. Accordingly, the Court denies Milke's motion to dismiss Counts I and II against her, and denies Hooser's motion to dismiss Count II against her.

### C. Plaintiffs State a Claim for Misappropriation of Trade Secrets and Violation of the DTSA (Counts III and IV) Against Milke and Hooser

Plaintiffs bring Count III, misappropriation of trade secrets in violation of the Texas Uniform Trade Secrets Act, TEX. CIV. PRAC. & REM. CODE ANN. § 134A.001, *et seq*. ("TUTSA"), and Count IV, violation of the DTSA, against O'Connell, Milke, Hooser, and Next Level. Plaintiffs allege that Milke and Hooser improperly acquired, disclosed, and utilized BRG's trade secrets without consent for their own financial gain. Further, Plaintiffs allege that Milke and Hooser utilized BRG trade secrets for the purpose of stealing BRG's clients and diverting business away from BRG.

TUTSA defines a trade secret as:

information, including a formula, pattern, compilation, program, device, method, technique, process, financial data, or list of actual or potential customers or suppliers, that: (A) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic

ORDER – PAGE 17

value from its disclosure or use; and (B) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

TEX. CIV. PRAC. & REM. CODE ANN. § 134A.002(6).  And TUTSA defines misappropriation as:

> (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B) disclosure or use of a trade secret of another without express or implied consent by a person who: (i) used improper means to acquire knowledge of the trade secret; (ii) at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was: (a) derived from or through a person who had utilized improper means to acquire it; (b) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (c) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or (iii) before a material change of the person's position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

TEX. CIV. PRAC. & REM. CODE ANN. § 134A.002(3).  The DTSA's definitions of trade secret and misappropriation are substantially similar to TUTSA's.  *See* 18 U.S.C. § 1839(3); 18 U.S.C. § 1839(5).

Milke and Hooser move the Court to dismiss Counts III and IV against them because Plaintiffs did not identify the specific trade secret that Milke or Hooser allegedly misappropriated, and because Plaintiffs' allegation that Milke and Hooser improperly acquired, disclosed, and utilized BRG trade secrets is a "bald allegation."  Def. Milke's Mot. to Dismiss 14 [27]; Def. Hooser's Mot. to Dismiss 13 [30].  Additionally, Milke and Hooser argue that Plaintiffs do not allege their damages with sufficient specificity.

Plaintiffs claim that their client lists, prospective client lists, specialized presentations, employee information skill sets, client contact information, client employee data, client preferences, client proposal materials, marketing materials, and future business development plans are trade secrets. *See* Pls.' First Am. Compl. ¶ 125. They allege that they took reasonable measures to protect those trade secrets, including password-protected databases, confidentiality and nondisclosure agreements, and limitations on dissemination of information on a need-to-know basis. *See id.* ¶ 126. Further, they allege that they derive economic value from the fact that their trade secrets are not generally known to those outside of BRG. *See id.* ¶ 145. Plaintiffs allege that Milke misappropriated these trade secrets by using Plaintiffs' resources to assist competitors, and disclosing confidential information to O'Connell for use in stealing clients from BRG, including after her employment with BRG ended. *See id.* ¶¶ 62–65. Plaintiffs allege that Hooser improperly acquired, disclosed, and utilized BRG trade secrets without consent for her own financial gain. *See id.* ¶ 129. Plaintiffs additionally allege that Hooser accepted and utilized BRG trade secrets for the purpose of stealing BRG clients and diverting business away from BRG. *See id.* ¶ 131. Plaintiffs have met their burden to state a claim for misappropriation of trade secrets under TUTSA and the DTSA. Accordingly, the Court denies Milke's and Hooser's respective motions to dismiss Counts III and IV against them.

### D.  Plaintiffs State A Claim for Tortious Interference with Existing Business Relationships (Count VII) and Fail to State a Claim for Tortious Interference with Prospective Business Relationships (Count V) Against Milke and Hooser

Plaintiffs allege that Milke and Hooser joined a competing business, and that they disclosed and used BRG's confidential information to solicit BRG clients.  *See id*. ¶ 160. Additionally, Plaintiffs allege that Milke induced, persuaded, and enticed Plaintiffs' customers to have no business relations or transactions with Plaintiffs and to execute Broker of Record, Producer of Record, and Agent of Record letters for the benefit of O'Connell and Next Level.  *See id*. ¶ 175.  Plaintiffs allege that Milke and Hooser continue to make false, fraudulent, defamatory, and malicious representations to Plaintiffs' customers and prospective customers about Plaintiffs, including statements related to BRG's solvency and Crissey's temperament.  *See id*. ¶ 176.  Plaintiffs accordingly claim that Milke and Hooser have tortiously interfered with their prospective and existing business relationships.

To prevail on a claim for tortious interference with prospective business relations, a plaintiff must establish that: (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct: (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff's injury; and (5) the plaintiff suffered actual damages or loss as a result.  *See Sanger*, 802 F.3d at 748 (citing *Coinmach*, 417 S.W.3d at 923).

ORDER – PAGE 20

To prevail on a claim for tortious interference with existing business relationships, a plaintiff must establish: "(1) unlawful actions undertaken without justification or excuse; (2) with intent to harm; and (3) actual damages." *Apani*, 300 F.3d at 634.  Though a plaintiff need not prove the existence of a valid contract, a plaintiff must show that the defendant's interference is motivated by malice. *See id*.

Milke and Hooser argue that Plaintiffs have not adequately pled the existence of customers or contracts affected by Milke's or Hooser's behavior, nor have Plaintiffs identified any customer that has turned to a competitor as a result of Milke's or Hooser's alleged interference.  Milke and Hooser argue that Plaintiffs merely recite the elements of their claims.

The Court agrees with Milke and Hooser to the extent that Plaintiffs fail to allege, in a nonconclusory manner, a reasonable probability that they would have entered into a business relationship with a third party.  Plaintiffs allege that Milke provided confidential information on BRG's prospective clients to competitors of BRG.  *See* Pls.' First Am. Compl. ¶ 65.  However, Plaintiffs do not identify who those clients are.  Nor do Plaintiffs identify which prospective clients Hooser allegedly interfered with.  Plaintiffs state that they intended to refer to clients in a secret Dropbox account, clients on the DJO list, and that they can only ascertain other prospective clients through discovery.

Because Plaintiffs do not reference a secret Dropbox account in their First Amended Complaint, or any attached materials, the Court does not consider the Dropbox account.

Even assuming Plaintiffs intend to refer to the clients on the DJO List, Plaintiffs only state in a conclusory manner that "[t]here is a reasonable probability that [BRG] would have entered into a business relationship with those clients." Texas courts have held that a reasonable probability of entering into a business relationship requires more than mere negotiations. Here, Plaintiffs have not alleged that they were engaged in any negotiations with the clients on the DJO list, let alone that anything more than negotiations occurred. Accordingly, the Court finds that Plaintiffs have not adequately alleged a reasonable probability that they would have entered into a business relationship with any prospective clients. *See also Cooper v. Harvey*, 108 F.Supp.3d 463, 472 (N.D. Tex. 2015) (holding that the plaintiff alleged a reasonable probability that he would have entered into a business relationship where the plaintiff described the proposed Licensing and Distribution Agreement between the plaintiff and the prospective client).

However, a claim for tortious interference with existing business relationships does not require that a plaintiff prove the existence of a valid contract. Plaintiffs have alleged that Milke induced Plaintiffs' customers to have no business relations or transactions with Plaintiffs and to execute Broker of Record, Producer of Record, and/or Agent of Record letters for the benefit of O'Connell and Next Level, and to the financial detriment of Plaintiffs. Plaintiffs also allege that Milke and Hooser made false, fraudulent, defamatory, and malicious representations to Plaintiffs' customers about Plaintiffs. Additionally, Plaintiffs explain that the e-mail from Hooser attached to the First Amended Complaint

shows that Hooser contacted Enchanted Rock LTD "to obtain the renewal of the client's benefits, but converting [sic] it to a client of Defendants Next Level and/or O'Connell." Pls.' Resp. to Hooser's Mot. to Dismiss 20 [43]; *see also* Pls.' First Am. Compl., Ex. 4 [20-1]. Taken as true, Plaintiffs have pled unlawful actions taken by Milke and Hooser with the intent to harm. Plaintiffs have additionally alleged that Milke's and Hooser's actions caused damages to the Plaintiffs. Accordingly, the Court grants Milke's and Hooser's motion to dismiss Count V and denies Milke's and Hooser's motion to dismiss Count VII against them.

### E. Plaintiffs State a Claim for Civil Conspiracy (Count VIII) Against Milke and Hooser

Plaintiffs allege that the Defendants had a meeting of the minds on a course of action that included "unfairly deceiving and stealing [BRG's] clients and employees by misappropriating and using Plaintiffs [sic] confidential and trade secret information." Pls.' First Am. Compl. ¶ 182.

To prevail on a claim for civil conspiracy in Texas, a plaintiff must establish: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result." *Wackman*, 602 F.3d at 408. Further, civil conspiracy "depends on participation in an underlying tort." *Homoki*, 717 F.3d at 402.

Milke and Hooser move the Court to dismiss Count VIII against them, arguing that Plaintiffs fail to identify the object or purpose of the conspiracy, that the Plaintiffs failed to plead a plausible meeting of the minds involving Milke or Hooser, and that Plaintiffs did not

allege that the other Defendants informed Milke or Hooser that they intended to breach any obligations allegedly owed to Plaintiffs.  Plaintiffs have alleged that O'Connell, Milke, and Hooser desired to steal BRG clients and employees by misappropriating and using confidential and trade secret information.  Additionally, Plaintiffs have pled a meeting of the minds by pleading at least circumstantial proof of intent to participate in the conspiracy. *Wackman*, 602 F.3d at 408.  Plaintiffs allege that O'Connell and Next Level have previously and continue actively to solicit BRG clients and potential clients through O'Connell's, Hooser's, and Milke's use of BRG trade secret and confidential information.  *See* Pls.' First Am. Compl. ¶ 92.  Further, Plaintiffs have alleged an unlawful, overt act by alleging tortious interference and misappropriation of trade secrets.  Plaintiffs allege that this conspiracy has caused Plaintiffs to incur damages.  Accordingly, the Court denies Milke's and Hooser's respective motions to dismiss Count VIII against them.

## V.  THE COURT DENIES THE MOTION TO STRIKE

Plaintiffs move the Court to strike certain statements from Next Level and O'Connell's first amended answer and counterclaims.  Specifically, Plaintiffs request that the Court strike the "Preliminary Statement," which discusses Crissey's finances, Crissey's relationship with O'Connell, Crissey's disposition in the office, and O'Connell's work with BRG on grounds that it is "immaterial, impertinent, scandalous, and prejudicial to Plaintiffs." Pls.' Mot. to Strike 1[45].  Plaintiffs also move the Court to strike paragraphs 218, 231, and 232 of the amended answer and counterclaims, which discuss Crissey's temper in the office.

ORDER – PAGE 24

"Both because striking a portion of a pleading is a drastic remedy and because it often is sought by the movant simply as a dilatory tactic, motions under Rule 12(f) are viewed with disfavor and are infrequently granted." *FDIC v. Niblo*, 821 F. Supp. 441, 449 (N.D. Tex. 1993). Because the Court finds no reason to strike these statements, the Court denies the motion to strike.

<h3 align="center">CONCLUSION</h3>

For the aforementioned reasons, the Court grants in part and denies in part the motions to dismiss, and denies the motion to strike. Because Plaintiffs have already amended their complaint, the Court denies leave to amend except to the extent that Plaintiffs are able to identify through discovery prospective customers in support of a claim for tortious interference with prospective business relationships.

Signed July 18, 2017.


David C. Godbey
United States District Judge

ORDER – PAGE 25